1  **WO**                                                                                              JDN

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Aubrey Gayle Padgett,            )   No. CV 07-1979-PHX-MHM (MEA)
                                 )
         Plaintiff,              )   **ORDER**
                                 )
vs.                              )
                                 )
Joseph Arpaio, et al.,           )
                                 )
         Defendants.             )
_____)

Plaintiff Aubrey Gayle Padgett brought this civil rights action under 42 U.S.C. § 1983 against Maricopa County Sheriff Joseph Arpaio (Doc. #9).[1] Before the Court is Defendant's Motion for Summary Judgment (Doc. #41), which is fully briefed (Doc. ##46-47).

The Court will grant Defendant's motion and terminate the action.

## I.    Background

Plaintiff's claims arose during his confinement at the Maricopa County Towers Jail in Phoenix, Arizona (Doc. #9 at 1).[2] Plaintiff, who was a pretrial detainee at the time, was placed in administrative segregation/protective custody at the Towers Jail after he was beaten by two other inmates at the Fourth Avenue Jail (see Doc. #1). In his First Amended

---

[1] Upon screening, the Court dismissed Maricopa County as a defendant (Doc. #11).

[2] Shortly after initiating this action, Plaintiff was transferred to the custody of the Arizona Department of Corrections (Doc. ##7, 10). He has since been transferred to the Great Plains Correctional Facility in Hinton, Oklahoma (Doc. #44).

Complaint, Plaintiff alleged that the conditions at the Towers Jail violated his constitutional rights (id. at 3-5). He set forth three counts for relief; however, the substance of his allegations in each count are that conditions of his confinement—overcrowding and excessive heat—violated his constitutional rights (id.).³ He claimed that he suffered heat boils and rashes over most of his body due to the heat (id. at 3-4). And he claimed that overcrowding threatened his safety and caused him to suffer high anxiety, sleep deprivation, tension, and migraine headaches (id. at 5). Plaintiff alleged that Defendant knew of and approved the policies at the jail that led to these violations (id. at 3-5).

The Court ordered Defendant to respond to Plaintiff's allegations (Doc. #11), and Defendant filed an Answer (Doc. #13). The Court issued a Scheduling Order (Doc. #14), and discovery commenced.

Defendant then filed his Motion for Summary Judgment (Doc. #41).

## II. Defendant's Motion for Summary Judgment

### A. Defendant's Contentions

Defendant seeks summary judgment on the grounds that Plaintiff's constitutional rights were not violated and Plaintiff did not suffer a physical injury as required under the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(e) (id.).

Defendant contends that during Plaintiff's confinement at the Towers Jail from April 2007 until January 2008, Plaintiff was housed in a cell that was designed for three inmates and that contained three beds (id. at 5). Defendant maintains that three inmates to a cell does not constitute per se overcrowding (id.).

With respect to the excessive heat allegation, Defendant states that the Maricopa County Environmental Services Department performed a Jail Evaluation Report on the Towers Jail in June, July, and August 2007 (id.). Defendant notes that none of these reports

---

³Those portions of Plaintiff's claims that alleged wet and moldy conditions; inadequate food, shelter, and clothing; and insufficient sanitation were found to be conclusory and, therefore, were dismissed on screening (Doc. #11 at 4-5). The Court also dismissed Plaintiff's equal protection claim (id. at 5-6) and those claims brought under Hart v. Hill, now Graves v. Arpaio, CV 77-0479-PHX-NVW (D. Ariz.) (id. at 2-3).

identified issues with excessive heat or ventilation at the jail (id.). Defendant states that for those problems identified in the reports, a request for repairs was immediately sent to the maintenance office for corrective action (id.). Defendant contends that these facts show that there was no policy of unconstitutional conditions related to overcrowding or excessive heat nor was there any intent to commit a violation (id. at 6).

Lastly, Defendant argues that under § 1997e(e), a prisoner must show that he suffered a physical injury that is more than *de minimis* (id. at 6-7). Defendant maintains that Plaintiff's medical records do not reflect the requisite injury; rather, they show that he was treated for eczema and contusion and swelling of a finger, which are *de minimis* injuries (id.).

In support of his motion, Defendant submits a separate Statement of Facts (DSOF) (Doc. #41, Attach.), which is supported by copies of Plaintiff's booking records (id., Ex. 1), a copy of Plaintiff's inmate housing information (id., Ex. 2), a copy of Plaintiff's request for protective segregation (id., Ex. 3), a copy of Plaintiff's responses to interrogatories (id., Ex. 4), copies of the Environmental Jail Evaluation Reports (id., Ex. 5), copies of memorandums on those evaluation reports (id., Ex. 6), and copies of Plaintiff's medical records (id., Ex. 7).

### B.    Plaintiff's Response[4]

In his opposition to the summary judgment motion, Plaintiff reasserts that during the summer months, he was confined in cells with two other inmates in temperatures that exceeded 100 degrees day and night (Doc. #46 at 2-3). Plaintiff contends that although there were routine inspections at the jail, there were no inspections of the individual cells in the housing unit; thus, there were no checks for proper air flow, temperature, or other violations (id. at 2). Plaintiff alleges that he was allowed out of his cell for just one hour a day to shower; however, because of the heat, he sweated immediately upon his return and, as a result, his blankets, sheets, and clothing were drenched with sweat (id. at 3). He further alleges that he had to eat his meals in the cell with the odor of his own sweat as well as that

---

[4]The Court issued the Notice required under Rand v. Rowland, 154 F.3d 952, 962 (9th Cir. 1998), informing Plaintiff of his obligation to respond to the motion (Doc. #42).

of two other inmates (id.). Plaintiff states that after a while, the smell of sweat resembled the smell of urine (id.).

Plaintiff emphasizes that he does not have much education and his previous requests for assistance of counsel have been denied (id. at 1-2, 5). He explains that he is unsure how to properly defend himself and prosecute this case but that he wants Defendant to be held accountable for his crimes against humanity and his civil rights violations (id. at 5-6). Plaintiff argues that there is a serious dispute over material facts and that the conditions at the jail amounted to cruel and unusual punishment (id. at 3, 6).

Plaintiff supports his opposition with an attached "Memorandum of Law," which lists legal propositions and case law supporting his claims (id., Mem. of Law). In this list, he asserts that "unconstitutional conditions cause more injury than discomfort alone" and that inmates are not entitled to a specific air temperature but they may not be subjected to extreme heat or cold and should be provided with bedding and clothing appropriate to the temperatures (id.).

### C. Defendant's Reply

In reply, Defendant argues that Plaintiff has not presented any evidence in support of his allegations and that, to the extent that he raises new allegations in his response, those claims are improper (Doc. #47). Defendant further argues that Plaintiff has not shown that there was a policy of unconstitutional conditions related to overcrowding or excessive heat (id. at 3). And Defendant contends that Plaintiff has not demonstrated the requisite culpable intent to establish a constitutional violation (id.). Lastly, Defendant reasserts that Plaintiff has not demonstrated a physical injury as required under the PLRA (id. at 3). Defendant states that any injuries Plaintiff alleges related to excessive heat are not more than *de minimis* and cannot support his claim (id. at 4).

## III. Legal Standards

### A. Summary Judgment

A court must grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact

- 4 -

and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Under summary judgment practice, the movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, that it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323; Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).

If the movant meets its burden with a properly supported motion, the burden then shifts to the nonmovant to present specific facts that show there is a genuine issue for trial. Fed. R. Civ. P. 56(e); Auvil v. CBS "60 Minutes", 67 F.3d 816, 819 (9th Cir. 1995); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The nonmovant need not establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968). By affidavit or as otherwise provided by Rule 56, the nonmovant must designate specific facts that show there is a genuine issue for trial. Anderson, 477 U.S. at 249; Devereaux, 263 F.3d at 1076. The nonmovant may not rest upon the pleadings' mere allegations and denials, but must present evidence of specific disputed facts. See Anderson, 477 U.S. at 248.

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. Id. at 249. In its analysis, the court must believe the nonmovant's evidence, and draw all inferences in the nonmovant's favor. Id. at 255.

### B. Fourteenth Amendment

The Fourteenth Amendment's Due Process Clause provides that "detainees have a right against jail conditions or restrictions that 'amount to punishment.'" Pierce v. County of Orange, 526 F.3d 1190, 1205 (9th Cir. 2008) (citing Bell v. Wolfish, 441 U.S. 520, 535-37 (1979)). The Fourteenth Amendment standard is more protective than the Eighth Amendment; "[t]his standard differs significantly from the standard relevant to convicted

prisoners, who may be subject to punishment so long as it does not violate the Eighth Amendment's bar against cruel and unusual punishment." Pierce, 526 F.3d at 1205; Jones v. Blanas, 393 F.3d 918, 931 (9th Cir. 2004). The Ninth Circuit has held that pretrial detainees' rights under the Fourteenth Amendment are nonetheless comparable to prisoner's rights under the Eighth Amendment; therefore, the same standards are applied. Byrd v. Maricopa County Sheriff's Dep't, 565 F.3d 1205, 1216 (9th Cir. 2009).

Under the Eighth Amendment, courts must consider two components: (1) whether the deprivation was sufficiently serious to constitute "cruel and unusual punishment"; and (2) whether the defendants acted with a "sufficiently culpable state of mind." Id. (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)). With respect to the latter component, if the pain inflicted is not part of the punishment prescribed by the prisoner's sentence, there must be some "mental element" attributed to the defendant to constitute punishment. Byrd, 565 F.3d at 1217.

This "mental element," or intent requirement, applies in the pretrial detainee context; "whether a particular action or condition of confinement amounts to punishment turns on whether the action taken, or condition imposed, was accompanied by punitive intent." Id. (citing Bell, 441 U.S. at 538-39). Thus, the test for identifying unconstitutional punishment of pretrial detainees is whether there was an express intent to punish or whether there was an alternative purpose for the restriction and whether the restriction appears excessive in relation to this alternative purpose. Demery v. Arpaio, 378 F.3d 1020, 1028 (9th Cir. 2004).

Not every disability imposed during pretrial detention constitutes "punishment" in the constitutional sense. Bell, 441 U.S. at 537. To constitute punishment, the harm caused by the action or condition "must either significantly exceed, or be independent of, the inherent discomforts of confinement." Demery, 378 F.3d at 1030. A court should look at the nature of the condition and whether it is reasonably related to a legitimate governmental objective. Pierce, 526 F.3d at 1205. If the condition or restriction is arbitrary or purposeless, a court may infer that the purpose of the action is punishment that may not be inflicted on pretrial detainees. Id. (citing Bell, 441 U.S. at 539).

**IV. Analysis**

   **A. Overcrowding**

Overcrowding is not unconstitutional per se, but it can result in certain effects that form the basis for a constitutional violation. Hoptowit v. Ray, 682 F.2d 1237, 1249 (9th Cir. 1982). These effects include increased violence, the reduction of other constitutionally required services such that they fall below Eighth Amendment standards, and the deterioration of shelter to the point that it is unfit for human habitation. Id.; see also Akao v. Shimoda, 832 F.2d 119, 120 (9th Cir. 1987) (per curiam) (reversing district court's dismissal of claim that overcrowding caused increased stress, tension, communicable disease, and confrontation between inmates); Toussaint v. Yockey, 722 F.2d 1490, 1492 (9th Cir. 1984) (constitutional violation may occur as a result of overcrowded prison conditions engendering violence, tension, and psychiatric problems).

The parties do not dispute that during Plaintiff's confinement at Towers Jail, he was housed in a three-man cell with two other inmates (Doc. #41, Ex. 4 (Pl. Resp. to Interrog. No. 1). Standing alone, Plaintiff's claim that there are three men housed to a cell is insufficient to show a deprivation because triple bunking of inmates is not per se unconstitutional. See Rhodes v. Chapman, 452 U.S. 337, 348 (1981). There is no evidence that crowding at the jail led to deprivations or the deterioration of shelter that implicated the Eighth Amendment. In his opposition, Plaintiff does not present any specific facts or evidence supporting his claim that crowding caused anxiety and tension at the jail (see Doc. #9 at 5). Thus, he has not shown that there existed extreme danger or violence among inmates as a result of crowding. Plaintiff's allegations that he suffered sleepless nights, needless anxiety, and that his safety was threatened by other inmates, are too general to support his overcrowding claim (see id.). Consequently, Defendant will be granted summary judgment on this claim.

   **B. Excessive Heat**

Confining prisoners in cells with near freezing temperatures may violate the Eighth Amendment. Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980); see also Keenan v.

- 7 -

Hall, 83 F.3d 1083, 1091 (9th Cir. 1996) (Eighth Amendment requires that prisoners receive adequate heating). It follows that subjecting prisoners to extreme heat may violate the Eighth Amendment. See Johnson v. Lewis, 217 F.3d 726, 729-30, 732 (9th Cir. 2000) (examining prisoners' claims that they were exposed to high temperatures and humidity and suffered heat-related medical problems). When considering an allegation that prisoners are exposed to extreme temperature, courts should examine factors such as the severity of the temperature, the duration, whether there are alternatives to protect prisoners, and whether there are other uncomfortable conditions combined with the temperature. Carr v. Tousley, 2009 WL 1514661, at *20 (D. Idaho May 27, 2009) (citing Dixon v. Godinez, 114 F.3d 640, 644 (7th Cir. 1997)).

Defendant submits evidence that there were monthly inspections during the period Plaintiff alleges he was subjected to excessive temperatures (Doc. #41, Ex. 5). According to the Jail Evaluation Reports, one of the criteria checked during these inspections is whether the dwelling units are adequately heated, cooled, and ventilated (id.). The reports during the relevant period include a note in June 2007 that it was very humid throughout the facility, and a note in August that ventilation was inadequate in certain housing units (id. (reports dated 6/27/07 and 8/30/07)). But those housing units listed as having poor ventilation did not include Plaintiff's housing unit (see id. (8/30/07 report) and Ex. 2 (Pl.'s housing assignments)). The evidence nonetheless shows that Plaintiff was exposed to humid conditions during the month of June. The evidence also shows that the jail responded to this problem and took corrective action within days of receiving the report (id., Ex. 6). Reports for the following months did not indicate a humidity problem (id., Ex. 5).

Defendant has met his burden to present the basis for his claim for summary judgment on the excessive heat allegation, and he has sufficiently identified evidence demonstrating the absence of a material factual dispute. See Celotex, 477 U.S. at 323. The burden shifts to Plaintiff, who must go beyond the pleadings to present specific facts or evidence showing a material factual dispute. See Anderson, 477 U.S. at 248.

Plaintiff contends that the routine inspections at the jail did not include inspections

of the cells in each housing unit (Doc. #46 at 2).  Although the report criteria required inspection of the dwelling units, which would appear to mean cells, Defendant did not respond to Plaintiff's contention in his reply.  Even taking Plaintiff's claim regarding the inspections as true, the Court finds that he still fails to show the existence of a material factual dispute on this issue.  First, Plaintiff fails to allege specific facts or produce evidence to support his claim that he suffered heat-related medical problems.  Moreover, he states that he was allowed a shower every day, which would offer some relief to the high temperatures (Doc. #46 at 3).  Second, Plaintiff fails to identify any evidence of an intention on the part of Defendant to punish.  See Byrd, 565 F.3d at 1217; Redman v. County of San Diego, 942 F.2d 1435, 1441-43 (9th Cir. 1991) (whether treatment of pre-trial detainees is "punishment" in violation of the Fourteenth Amendment depends on whether prison officials acted with deliberate indifference to the detainees' needs); see also Hallstrom v. Garden City, 991 F.2d 1473, 1485 (9th Cir. 1993) (applying Redman to conditions of confinement claim).

Finally, and most importantly, Plaintiff does not submit any specific facts or evidence showing that *Defendant* is liable for a constitutional deprivation.  To establish liability under § 1983, Plaintiff must demonstrate Defendant's personal involvement in the alleged violation.  See Torres v. City of Los Angeles, 548 F.3d 1197, 1206 (9th Cir. 2008).  In other words, Plaintiff must specifically show how Defendant, through his own individual actions, violated Plaintiff's constitutional right.  See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1948 (2009).  The liability inquiry focuses on whether Defendant's personal action or inaction caused the violation to occur.  Absent direct personal involvement, Plaintiff must show that there is a sufficient causal connection between Defendant's conduct and the constitutional violation.  Jeffers v. Gomez, 267 F.3d 895, 915 (9th Cir. 2001) (citations omitted).  As a supervisor, Defendant can be liable for his direct involvement in the implementation of a policy if that policy is so deficient that it "is a repudiation of constitutional rights" and is "the moving force of the constitutional violation."  Redman, 942 F.2d at 1446-47 (citation omitted).

Here, there are no allegations of direct involvement by Defendant nor is there evidence of any policies at the jail that allowed inmates to be exposed to excessive heat or,

for that matter, to overcrowding. Plaintiff merely presents conclusory allegations that Defendant "knows and approves of" and "enforces" the policies at the jail (Doc. #9 at 3, 5). Without specific evidence, Plaintiff cannot demonstrate the requisite causal connection or the existence of a material question of fact as to Defendant's liability.

For these reasons, summary judgment will be granted to Defendant. The Court need not address Defendant's argument regarding lack of physical injury.[5]

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is withdrawn as to Defendant's Motion for Summary Judgment (Doc. #41).

(2) Defendant's Motion for Summary Judgment (Doc. #41) is **granted**.

(3) The Clerk of Court must dismiss the First Amended Complaint and enter judgment accordingly.

DATED this 20th day of August, 2009.

_____
Mary H. Murguia
United States District Judge

---

[5] The Court notes, however, that the Ninth Circuit has held that § 1997e(e) does not bar claims for compensatory and punitive damages based on constitutional violations. Oliver v. Keller, 289 F.3d 623, 630 (9th Cir. 2002). Because Plaintiff sought such damages for alleged Fourteenth and Eighth Amendment violations, § 1997e(e) would not apply to his claims (see Doc. #9 at 3-6).

- 10 -